# No. 23-600

SUSAN GIORDANO, ET AL.,

*Plaintiffs-Appellants,*

v.

SAKS INCORPORATED, ET AL.,

*Defendants-Appellees.*

On Appeal from the
United States District Court for the Eastern District of New York
No. 1:20-cv-00833-MKB-CLP (Hon. Margo K. Brodie)

## BRIEF FOR THE UNITED STATES OF AMERICA
## AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS-APPELLANTS

JONATHAN S. KANTER
  *Assistant Attorney General*
DOHA MEKKI
  *Principal Deputy Assistant
  Attorney General*
MAGGIE GOODLANDER
  *Deputy Assistant Attorney
  General*
DAVID B. LAWRENCE
  *Policy Director*
ERIC D. DUNN
  *Counsel to the Assistant
  Attorney General*

DANIEL E. HAAR
NICKOLAI G. LEVIN
STRATTON C. STRAND
PETER M. BOZZO
BRANDON STORM
  *Attorneys*
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., N.W.
Room 3224
Washington, D.C. 20530-0001
(202) 803-1196
peter.bozzo@usdoj.gov

*Counsel for the United States of America*

# TABLE OF CONTENTS

Page

INTEREST OF THE UNITED STATES OF AMERICA ........................................................ 1

STATEMENT OF THE ISSUES............................................................................................. 3

BACKGROUND ..................................................................................................................... 3

ARGUMENT ........................................................................................................................... 6

   I.   THE DISTRICT COURT MISAPPLIED THE ANCILLARY-RESTRAINTS DEFENSE TO
      PER SE LIABILITY UNDER SECTION 1 ................................................................. 8

  II.  THE DISTRICT COURT MISAPPLIED THE LAW IN ITS STATUTE-OF-LIMITATIONS
      ANALYSIS .................................................................................................................... 21

CONCLUSION ...................................................................................................................... 33

CERTIFICATE OF COMPLIANCE ................................................................................... 35

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Addyston Pipe & Steel Co. v. United States*,
175 U.S. 211 (1899) ................................................................................................ 14

*American Tobacco Co. v. United States*,
328 U.S. 781 (1946) ................................................................................................ 20

*Anderson News, L.L.C. v. American Media, Inc.*,
680 F.3d 162 (2d Cir. 2012) .................................................................................. 20

*Anderson v. Shipowners' Ass'n of Pacific Coast*,
272 U.S. 359 (1926) ....................................................................................... 6, 7, 11

*Aya Healthcare Services, Inc. v. AMN Healthcare, Inc.*,
No. 20-55679 (9th Cir. Nov. 19, 2020).................................................................. 1

*Aya Healthcare Services, Inc. v. AMN Healthcare, Inc.*,
9 F.4th 1102 (9th Cir. 2021)....................................................................... 12, 13, 14

*Bankers Trust v. Rhoades*,
859 F.2d 1096 (2d Cir. 1988)................................................................................ 29

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979) ........................................................ 23, 30, 31, 33

*Blackburn v. Sweeney*,
53 F.3d 825 (7th Cir. 1995) ........................................................................... 13, 18

*Board of Regents of University of Oklahoma v. NCAA*,
468 U.S. 85 (1984) .................................................................................................. 13

*Borozny v. Raytheon*,
No. 3:21-cv-01657, 2023 WL 348323 (D. Conn. Jan. 20, 2023) ........................ 12

*Business Electronics Corp. v. Sharp Electronics Corp.*,
485 U.S. 717 (1988) .................................................................................................. 9

*Capital Imaging v. Mohawk Valley Medical Ass'n*,
  996 F.2d 537 (2d Cir. 1993) .............................................................................. 10

*Connecticut General Life Insurance Co. v. BioHealth Labs, Inc.*,
  988 F.3d 127 (2d Cir. 2021) .............................................................................. 22

*Deslandes v. McDonald's USA, LLC*,
  Nos. 22-2333, 22-2334 (7th Cir. Nov. 18, 2022) ........................................................ 1

*Freeman v. San Diego Ass'n of Realtors*,
  322 F.3d 1133 (9th Cir. 2003) ............................................................................ 13

*FTC v. Indiana Federation of Dentists*,
  476 U.S. 447 (1986) ........................................................................................ 9

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*,
  392 U.S. 481 (1968) ................................................................................ 21, 23, 27

*Humana Inc. v. Celgene Corp.*,
  No. 19-7532, 2022 WL 1237883 (D.N.J. Apr. 27, 2022) ............................... 28, 29

*In re Animation Workers Antitrust Litigation*,
  123 F. Supp. 3d 1175 (N.D. Cal. 2015) ............................................................ 12

*In re Cotton Yarn Antitrust Litigation*,
  505 F.3d 274 (4th Cir. 2007) ............................................................................ 30

*In re Geisinger Health & Evangelical Community Hospital Healthcare
  Workers Antitrust Litigation*,
  No. 4:21-CV-00196, 2021 WL 5330783 (M.D. Pa. Nov. 16, 2021) ................... 12

*In re High-Tech Employee Antitrust Litigation*,
  856 F. Supp. 2d 1103 (N.D. Cal. 2012) ............................................................ 12

*In re Insurance Brokerage Antitrust Litigation*,
 618 F.3d 300 (3d Cir. 2010) ................................................................................ 14

*In re Outpatient Medical Center Employee Antitrust Litigation*,
 No. 21-cv-00305, 2022 WL 4465929 (N.D. Ill. Sept. 26, 2022) ......................... 12

*In re Pre-Filled Propane Tank Antitrust Litigation*,
 860 F.3d 1059 (8th Cir. 2017) .................................................................... 30, 32

*In re Railway Industry Employee No-Poach Antitrust Litigation*,
 No. 2:18-mc-00798-JFC (W.D. Pa. Feb. 8, 2019) .......................................... 1

*In re Railway Industry Employee No-Poach Antitrust Litigation*,
 395 F. Supp. 3d 464 (W.D. Pa. 2019) ............................................................ 12

*In re Seroquel XR*,
 No. 20-1076-CFC, 2022 WL 2438934 (D. Del. July 5, 2022) .............................. 28

*In re Travel Agent Commission Antitrust Litigation*,
 583 F.3d 896 (6th Cir. 2009) ............................................................................ 30

*In re Wholesale Grocery Products Antitrust Litigation*,
 752 F.3d 728 (8th Cir. 2014) ............................................................................ 24

*Klehr v. A.O. Smith Corp.*,
 521 U.S. 179 (1997) .............................................................................. 24, 29, 32

*Lektro-Vend Corp. v. Vendo Co.*,
 600 F.2d 255 (7th Cir. 1981) ............................................................................ 18

*MacNaughton v. Young Living Essential Oils, LC*,
 67 F.4th 89 (2d Cir. 2023) ................................................................................ 17

*Major League Baseball Properties, Inc. v. Salvino*,
 542 F.3d 290 (2d Cir. 2008) ................................................................ 14, 15, 18

*Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*,
   334 U.S. 219 (1948) ............................................................................... 10, 31

*Markson v. CRST International, Inc.*,
   No. 5:17-cv-01261-SB-SP, 2021 WL 1156863 (C.D. Cal. Feb. 10, 2021) ........ 12

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
   198 F.3d 823 (11th Cir. 1999) ....................................................................... 30

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
   211 F.3d 1224 (11th Cir. 2000) ..................................................................... 30

*NBA v. Williams*,
   45 F.3d 684 (2d Cir. 1995) ........................................................................... 11

*NCAA v. Alston*,
   141 S. Ct. 2141 (2021) ........................................................................ 6, 11, 32

*NCAA v. Board of Regents of University of Oklahoma*,
   707 F.2d 1147 (10th Cir. 1983) ..................................................................... 13

*Nichols v. Spencer International Press, Inc.*,
   371 F.2d 332 (7th Cir. 1967) ......................................................................... 11

*Ohio v. American Express Co.*,
   138 S. Ct. 2274 (2018) ............................................................................... 9, 10

*Oliver v. SD-3C LLC*,
   751 F.3d 1081 (9th Cir. 2014) ....................................................................... 30

*Palmer v. BRG of Georgia, Inc.*,
   498 U.S. 46 (1990) ........................................................................................ 10

*Pani v. Empire Blue Cross Blue Shield*,
   152 F.3d 67 (2d Cir. 1998) ........................................................................... 15

*Quinonez v. National Ass'n of Securities Dealers, Inc.*,
 540 F.2d 824 (5th Cir. 1976) ............................................................................. 11

*Roman v. Cessna Aircraft Co.*,
 55 F.3d 542 (10th Cir. 1995) ............................................................................. 11

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*,
 792 F.2d 210 (D.C. Cir. 1986) ........................................................................ 9, 13

*Schering-Plough Corp. v. FTC*,
 402 F.3d 1056 (11th Cir. 2005) ......................................................................... 13

*Seaman v. Duke University*,
 No. 1:15-cv-00462-CCE-JLW (M.D.N.C. Mar. 7, 2019) ............................................. 1

*Slattery v. Hochul*,
 61 F.4th 278 (2d Cir. 2023) ................................................................................. 3

*Standard Oil Co. v. United States*,
 221 U.S. 1 (1911) ............................................................................................... 9

*Texaco Inc. v. Dagher*,
 547 U.S. 1 (2006) ......................................................................................... 13, 16

*Todd v. Exxon Corp.*,
 275 F.3d 191 (2d Cir. 2001) ........................................................................... 10, 11

*Turner v. McDonald's USA, LLC*,
 No. 19-C-5524, 2020 WL 3044086 (N.D. Ill. Apr. 24, 2020) ........................... 24, 25

*United States v. Addyston Pipe & Steel Co.*,
 85 F. 271 (6th Cir. 1898) ............................................................................... 14, 18

*United States v. Afriyie*,
 27 F.4th 161 (2d Cir. 2022) ........................................................................... 29, 30

*United States v. Aiyer*,
33 F.4th 97 (2d Cir. 2022) ............................................................ 10, 12, 13, 14

*United States v. Bensinger Co.*,
430 F.2d 584 (8th Cir. 1970) ................................................................... 20

*United States v. Brown*,
936 F.2d 1042 (9th Cir. 1991) ................................................................. 11

*United States v. Cadillac Overall Supply Co.*,
568 F.2d 1078 (5th Cir. 1978) ................................................................ 10

*United States v. Cooperative Theatres of Ohio, Inc.*,
845 F.2d 1367 (6th Cir. 1988) ................................................................ 10

*United States v. eBay, Inc.*,
No. 5:12-cv-05869 (N.D. Cal. Nov. 16, 2012) ...................................... 1

*United States v. eBay, Inc.*,
968 F. Supp. 2d 1030 (N.D. Cal. 2013) ................................................. 12

*United States v. Hee*,
No. 2:21-cr-00098-RFB-BNW (D. Nev. Mar. 30, 2021) ..................... 1

*United States v. Kissel*,
218 U.S. 601 (1910) ................................................................................ 28

*United States v. Reicher*,
983 F.2d 168 (10th Cir. 1992) ................................................................ 20

*United States v. Socony-Vacuum Oil Co.*,
310 U.S. 150 (1940) ................................................................................ 28

*United States v. Topco Assocs.*,
405 U.S. 596 (1972) ................................................................................ 10

Page(s)

*United States v. Trenton Potteries Co.*,
   273 U.S. 392 (1927) ......................................................................................... 28

*United States v. W.F. Brinkley & Son Construction Co.*,
   783 F.2d 1157 (4th Cir. 1986) ...................................................................... 20

*US Airways, Inc. v. Sabre Holdings Corp.*,
   938 F.3d 43 (2d Cir. 2019) ............................................... 5, 27, 28, 29, 30

*US Airways, Inc. v. Sabre Holdings Corp.*,
   No. 11-civ-2725, 2022 WL 1125956 (S.D.N.Y. Apr. 15, 2022) ........... 29

*West Penn Allegheny Health System, Inc. v. UPMC*,
   627 F.3d 85 (3d Cir. 2010) ...................................................... 24, 30, 31

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*,
   549 U.S. 312 (2007) .......................................................................................... 11

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   401 U.S. 321 (1971) .............................................................. 22, 23, 26, 31, 33

**STATUTES**

15 U.S.C. § 1 ........................................................................................................ 1, 9

15 U.S.C. § 7a note ................................................................................................ 10

15 U.S.C. § 15b ............................................................................................... 22, 29

**OTHER AUTHORITIES**

U.S. Dep't of Treasury, *The State of Labor Market Competition*
   (Mar. 7, 2022), https://home.treasury.gov/system/files/136/
   State-of-Labor-Market-Competition-2022.pdf ........................................... 7

**INTEREST OF THE UNITED STATES OF AMERICA**

The United States enforces the federal antitrust laws and has a strong interest in their correct application. The United States has brought cases under Section 1 of the Sherman Act, 15 U.S.C. § 1, against employers who enter into market-allocation conspiracies, including by conspiring not to hire, solicit, or otherwise compete for employees. *See, e.g.*, *United States v. Hee*, No. 2:21-cr-00098-RFB-BNW (D. Nev. Mar. 30, 2021); *United States v. eBay, Inc.*, No. 5:12-cv-05869 (N.D. Cal. Nov. 16, 2012). The United States also has filed amicus briefs and statements of interest under 28 U.S.C. § 517 addressing such employee-allocation schemes. *See, e.g.*, *Deslandes v. McDonald's USA, LLC*, Nos. 22-2333, 22-2334 (7th Cir. Nov. 18, 2022) (Doc. 51); *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 20-55679 (9th Cir. Nov. 19, 2020) (Doc. 14); *Seaman v. Duke Univ.*, No. 1:15-cv-00462-CCE-JLW (M.D.N.C. Mar. 7, 2019) (Doc. 325); *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, No. 2:18-mc-00798-JFC (W.D. Pa. Feb. 8, 2019) (Doc. 158).

The United States files this brief under Federal Rule of Appellate Procedure 29(a)(2) to urge this Court to correct two legal errors in the decision dismissing the amended complaint below.

First, the District Court misstated and misapplied the ancillary-restraints doctrine, a defense to per se liability under Section 1. The elements

of ancillarity are that the challenged restraint must be subordinate and collateral to a separate, legitimate business collaboration among the defendants, and must be reasonably necessary to achieve the collaboration's procompetitive objectives. Dismissal at the pleading stage is not proper except in the unusual circumstance when defendants, taking the complaint's allegations as true, can establish that both elements are satisfied. Here, the District Court found only that the alleged conspiracy was "accompanied by" a legitimate collaboration, not—as required for the defense—that defendants had shown that the conspiracy was subordinate and collateral to that collaboration or reasonably necessary to accomplish the collaboration's procompetitive objectives.

Second, the District Court misapplied the law governing the applicable statute of limitations. The District Court incorrectly held that three plaintiffs' claims were untimely, reasoning that the continuing-violation doctrine did not apply. Under that doctrine, if defendants engage in an ongoing antitrust conspiracy, a cause of action accrues with each overt act that injures the plaintiff. Here, the continuing-violation doctrine applies because plaintiffs alleged that (1) defendants engaged in an ongoing conspiracy and (2) defendants furthered the conspiracy by committing overt acts that harmed each plaintiff during the limitations period.

## STATEMENT OF THE ISSUES

1.  Whether the District Court erred in rejecting plaintiffs' per se claims based on the ancillary-restraints defense when the amended complaint's allegations did not establish either of the defense's two elements.

2.  Whether the District Court committed legal error in its statute-of-limitations analysis by failing to apply the continuing-violation doctrine to allegations that defendants, in furtherance of an employee-allocation conspiracy, committed overt acts that harmed plaintiffs during the limitations period.

## BACKGROUND[1]

1.  This case involves an alleged conspiracy by which some defendants agreed not to compete for another defendant's employees.  Am. Compl., Dkt. 44, ¶ 89.  "Beginning no later than 2014," five "luxury brands" that sell "goods and apparel" (the "Brand Defendants") each agreed with a "department store chain" ("Saks") not to hire or solicit certain Saks employees.  *Id.* ¶¶ 21, 89, 210.

---

[1] These facts come from the amended complaint's allegations, which are "taken as true" on a motion to dismiss.  *Slattery v. Hochul*, 61 F.4th 278, 286 (2d Cir. 2023) (citation omitted).

The conspiracy allegedly extends to all "Luxury Retail Employees," or employees who "work in [Saks's] stores" and "sell and/or manage the sale of luxury goods to consumers"—including current Saks employees and employees who worked for Saks within the previous six months. *Id.* ¶¶ 1, 89. In addition, Saks entered into a no-hire/no-solicitation agreement not only with the Brand Defendants, but also with "numerous other unnamed co-conspirators"—including "any brand carried by Saks" and "any of the designer companies at Saks." *Id.* ¶¶ 118, 175, 180-81. The agreement's "only" exception is that Saks employees can move to a Brand Defendant if the "transfer [i]s approved" by Saks and the Brand Defendant. *Id.* ¶ 210.

2. Plaintiffs, four former Saks employees, allege that the conspiracy is a *per se* Section 1 violation. *Id.* ¶¶ 3, 215. Plaintiffs allegedly received reduced compensation and were unable to move from Saks to the Brand Defendants due to the conspiracy. *Id.* ¶¶ 1-2, 93-94, 99-104, 106-27, 140-93, 196, 200, 211, 214, 217. Defendants filed a motion to dismiss, which the District Court granted. Order, Dkt. 130.

a. The court held that three plaintiffs' claims were time-barred under the four-year statute of limitations. *Id.* at 12-21. The court noted that, because these plaintiffs had started working at Saks in 2014 or earlier, they were first injured—through limited job mobility and artificially suppressed

wages—when the alleged conspiracy formed no later than 2014. *Id.* at 12-13. That rendered their claims "*prima facie* untimely" because the original complaint was filed on February 14, 2020. *Id.* at 12 (emphasis omitted).

Despite acknowledging defendants' "conce[ssion] that the alleged conduct 'repeatedly invaded' Plaintiffs' interest on a continual basis both before and during the limitations period," the District Court stated that plaintiffs could not invoke the "continuing violation doctrine" to overcome the *prima facie* untimeliness. *Id.* at 12-21 & n.8. According to the District Court, the allegedly injurious actions during the limitations period—the Brand Defendants' refusing to hire plaintiffs and Saks's paying them suppressed wages—were not "overt acts." *Id.* at 14-21. The District Court relied on this Court's statement in *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 69 (2d Cir. 2019), that "performance of a contract" is not "an independent overt act" and asserted that denials of job opportunities and payments of reduced wages merely reaffirmed defendants' decision to form the conspiracy. Order, Dkt. 130 at 15-16.

b. While finding the fourth plaintiff's claim timely, the court held that the amended complaint failed to allege an unreasonable restraint of trade. *Id.* at 21-22, 27-47. Despite recognizing correctly that naked (i.e., non-ancillary) horizontal employee-allocation conspiracies are per se unlawful, *id.* at 28-29

& n.17, the District Court invoked the ancillary-restraints defense to hold that the "per se rule" did not apply, *id.* at 31-32.  The court held that the alleged restraint is ancillary because the conspiracy purportedly "accompan[ies]" "collaborative business relationships" among the defendants—specifically, that the Brand Defendants "sell their products and have concessions in Saks stores."[2]  *Id.*  But the District Court did not address the allegations that the conspiracy is intended solely to suppress employee compensation and mobility; that defendants "actively concealed" the conspiracy; and that the conspiracy extends to all Saks employees (even those who approach the Brand Defendants unsolicited), to all brands that sell products at Saks (even those without concessions), and for the entire duration of employees' tenures at Saks (plus six months).  *E.g.*, Am. Compl., Dkt. 44, ¶¶ 89, 93-95, 173-81.  Rather, the District Court stated that, "absent the no-hire agreement, there would be a continual risk that the Brand Defendants would use their concessions in Saks stores to recruit employees."  Order, Dkt. 130 at 32.

## ARGUMENT

The Supreme Court has long made clear that the Sherman Act protects competition for workers.  *NCAA v. Alston*, 141 S. Ct. 2141 (2021); *Anderson v.*

---

[2] "Concessions" are spaces rented by the Brand Defendants in Saks stores. Compl., Dkt. 1, No. 1:20-cv-01769, ¶ 3.

*Shipowners' Ass'n of Pac. Coast*, 272 U.S. 359, 363-64 (1926).  Conspiracies among employers not to compete for employees' labor lead to lower wages, reduced benefits, and worse working conditions.  *See* U.S. Dep't of Treasury, *The State of Labor Market Competition* 1, 23-25 (Mar. 7, 2022), https://home.treasury.gov/system/files/136/State-of-Labor-Market-Competition-2022.pdf.  Here, for example, plaintiff Angelene Hayes could not exit her $17-per-hour job at Saks for a salaried position at Gucci solely because, as a Gucci manager informed her, the alleged conspiracy barred the transfer.  Am. Compl., Dkt. 44, ¶¶ 109, 114.

The District Court misapplied the antitrust laws in two ways.  First, the court incorrectly applied the ancillary-restraints defense to per se liability.  The burden of proving that an agreement is ancillary rests with defendants, who must show that the restraint is (1) subordinate and collateral to a separate, legitimate business collaboration among them and (2) reasonably necessary to the collaboration's procompetitive objectives.  To obtain dismissal at the pleading stage based on an ancillary-restraints defense, a defendant must show that those prerequisites are satisfied from the face of the complaint.  The defense is a fact-intensive inquiry.  Contrary to the District Court's reasoning, the fact that the challenged restraint merely "accompan[ies]" a broader relationship among the defendants, *see* Order,

Dkt. 130 at 31, is not enough to satisfy either of the defense's two elements. Here, the amended complaint lacks allegations that the restraint is related in any way, let alone reasonably necessary, to the broader relationship. In fact, the amended complaint contains allegations that tend to refute both elements.

Second, the District Court misapplied the law governing the applicable statute of limitations. Supreme Court precedent makes clear that a cause of action accrues each time a party is injured by an overt act committed as part of a continuing conspiracy. Plaintiffs' allegations fit the continuing-violation doctrine like a glove: Defendants allegedly are engaged in an ongoing conspiracy and committed overt acts during the limitations period—repeated refusals to hire plaintiffs and continual payment of suppressed wages— pursuant to the conspiracy. By failing to apply the continuing-violation doctrine, the District Court undercut workers' ability to seek redress under Section 1.

## I. THE DISTRICT COURT MISAPPLIED THE ANCILLARY-RESTRAINTS DEFENSE TO PER SE LIABILITY UNDER SECTION 1

The ancillary-restraints defense to per se liability is just that: a defense. Defendants bear the obligation of raising and proving the defense, and, to do so, they must establish the defense's two elements. The District Court failed to conduct the proper analysis, concluding improperly that the ancillarity

defense was satisfied simply because the restraint "accompan[ies]" a business collaboration.  Order, Dkt. 130 at 31.

1.  Section 1 bars every "contract," "combination," or "conspiracy" that unreasonably restrains trade.  15 U.S.C. § 1; *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 457 (1986).  "Restraints can be unreasonable in one of two ways." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283 (2018).  First, the Sherman Act condemns certain restraints as per se unreasonable based on the restraints' inherently anticompetitive "nature and character."  *Standard Oil Co. v. United States*, 221 U.S. 1, 64-65 (1911).  Second, "[r]estraints that are not unreasonable per se are judged under the 'rule of reason,'" a "fact-specific assessment" of "the restraint's actual effect on competition."  *Am. Express*, 138 S. Ct. at 2284 (internal quotation marks and brackets omitted).

Courts often distinguish between horizontal and vertical restraints. "[H]orizontal restraints . . . eliminate some degree of rivalry between persons or firms who are actual or potential competitors."  *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 229 (D.C. Cir. 1986).  By contrast, "vertical restraints" are "imposed by agreement between firms at different levels of distribution" on matters over which they do not compete.  *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 (1988).

Horizontal conspiracies to divide customers or territories, including conspiracies among competitors to refrain from soliciting each other's customers, are per se illegal unless defendants establish the ancillary-restraints defense.[3] *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49-50 (1990); *United States v. Topco Assocs.*, 405 U.S. 596, 608-12 (1972); *United States v. Aiyer*, 33 F.4th 97, 115 (2d Cir. 2022); *Capital Imaging v. Mohawk Valley Med. Ass'n*, 996 F.2d 537, 542 (2d Cir. 1993); *see also United States v. Coop. Theatres of Ohio, Inc.*, 845 F.2d 1367, 1373 (6th Cir. 1988) (conspiracy to refrain from soliciting competitor's customers per se illegal); *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1088 (5th Cir. 1978) (same). As Congress recently has confirmed: "Conspiracies among competitors to . . . allocate markets are categorically and irredeemably anticompetitive and contravene the competition policy of the United States." 15 U.S.C. § 7a note (Findings; Purpose of 2020 Amendment).

2. The same principles apply—and the per se rule thus applies—when buyers enter naked horizontal conspiracies to allocate sellers or territories. *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219, 236 (1948) (conspiracy among purchasers to fix prices per se unlawful); *Todd v. Exxon*

---

[3] If an alleged restraint is vertical, the rule of reason typically applies. *See Am. Express*, 138 S. Ct. at 2284.

*Corp.*, 275 F.3d 191, 201 (2d Cir. 2001) (Sotomayor, J.) ("[A] horizontal conspiracy among buyers to stifle competition is as unlawful as one among sellers."); *United States v. Brown*, 936 F.2d 1042, 1044-45 & n.1 (9th Cir. 1991) (buy-side conspiracy to allocate inputs per se unlawful); *cf. Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 320, 322 (2007) ("The kinship between monopoly and monopsony," or "market power on the buy side of the market," "suggests that similar legal standards should apply to claims of monopolization and to claims of monopsonization.").

For the same reasons, the per se rule applies to naked horizontal conspiracies among employers (i.e., buyers of employees' services) to allocate employees by declining to hire or solicit them. *NBA v. Williams*, 45 F.3d 684, 687 (2d Cir. 1995) (stating that it "would be *per se* illegal" for "employers who compete for labor" to "agree among themselves to purchase that labor only on certain specified terms and conditions"); *see also Alston*, 141 S. Ct. at 2155-57 (applying Sherman Act to labor-market restraints); *accord Anderson*, 272 U.S. at 362-63; *Todd*, 275 F.3d at 198-99; *Quinonez v. Nat'l Ass'n of Sec. Dealers, Inc.*, 540 F.2d 824, 828-29 (5th Cir. 1976); *Nichols v. Spencer Int'l Press, Inc.*, 371 F.2d 332, 335-37 (7th Cir. 1967); *cf. Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 543-45 (10th Cir. 1995) (finding antitrust injury based on no-hire agreement).

3. Thus, agreements among competing employers not to hire or solicit each other's employees are per se unlawful unless defendants establish ancillarity. *See Borozny v. Raytheon Techs. Corp.*, No. 3:21-cv-01657, 2023 WL 348323, at *6-8 (D. Conn. Jan. 20, 2023); *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, No. 21-cv-00305, 2022 WL 4465929, at *10-11 (N.D. Ill. Sept. 26, 2022); *Markson v. CRST Int'l, Inc.*, No. 5:17-cv-01261-SB-SP, 2021 WL 1156863, at *4 (C.D. Cal. Feb. 10, 2021); *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 480-85 (W.D. Pa. 2019); *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1211-14 (N.D. Cal. 2015); *United States v. eBay, Inc.*, 968 F. Supp. 2d 1030, 1038-39 (N.D. Cal. 2013); *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1110-12, 1122 (N.D. Cal. 2012); *see also Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1110 n.4 (9th Cir. 2021) (without deciding the issue, finding "considerable merit" in the argument "that the *per se* rule applies to naked non-solicitation agreements"); *In re Geisinger Health & Evangelical Cmty. Hosp. Healthcare Workers Antitrust Litig.*, No. 4:21-CV-00196, 2021 WL 5330783, at *2-4 (M.D. Pa. Nov. 16, 2021) (denying motion to dismiss per se claim based on "no-poach agreement").

Ancillarity is a defense to per se illegality, and, if defendants raise the defense, they bear the burden of establishing it. *See Aiyer*, 33 F.4th at 115

(describing "ancillary restraints doctrine" as "exception[]" and "exempt[ion]" from otherwise "categorical" per se rule); *see also Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1152 (9th Cir. 2003) (defendants' ancillarity argument "fail[ed] to state a valid defense"); *Blackburn v. Sweeney*, 53 F.3d 825, 828-29 (7th Cir. 1995) (rejecting ancillarity defense where defendants' evidence and arguments did not support it); *Bd. of Regents of Univ. of Okla. v. NCAA*, 707 F.2d 1147, 1154 n.9 (10th Cir. 1983) (burden of "proving the effectiveness and necessity" of allegedly ancillary restraints rightly placed on defendant), *aff'd*, 468 U.S. 85 (1984).

To establish ancillarity, defendants must make two showings. First, defendants must demonstrate that the challenged restraint is "subordinate and collateral," *Rothery Storage*, 792 F.2d at 224, to a separate, "legitimate business collaboration" among them, *Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006). *See Aya*, 9 F.4th at 1109 (adopting two-part ancillarity test with "subordinate and collateral" requirement as first element); *see also Aiyer*, 33 F.4th at 115 (ancillary-restraints doctrine "governs the validity" of certain restraints "imposed by a legitimate business collaboration" (quoting *Dagher*, 547 U.S. at 7)). In other words, the restraint must be "secondary," *Schering-Plough Corp. v. FTC*, 402 F.3d 1056, 1073 (11th Cir. 2005), to "a larger endeavor"—paradigmatically, "a joint venture"—that achieves "efficiency-

enhancing purposes." *Major League Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 338-39 (2d Cir. 2008) (Sotomayor, J., concurring in the judgment) (internal quotation marks and citation omitted); *see Aiyer*, 33 F.4th at 116 (restraint must be ancillary to "legitimate and competitive purposes" of "business association"); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 345 (3d Cir. 2010) (adopting two-part ancillary test and relying on *Salvino* concurrence's discussion of ancillary-restraints doctrine).

Second, defendants must demonstrate that the challenged restraint is "reasonably necessary to achieve any of the efficiency-enhancing purposes" of the collaboration. *Salvino*, 542 F.3d at 338 (Sotomayor, J., concurring in the judgment); *see United States v. Addyston Pipe & Steel Co.*, 85 F. 271, 281 (6th Cir. 1898) (adopting "reasonably necessary" standard), *aff'd in relevant part & modified in part*, 175 U.S. 211 (1899); *see also Aya*, 9 F.4th at 1109 (same); *cf. Aiyer*, 33 F.4th at 115 (citing *Aya* favorably).  Thus, even if a restraint "'facilitates' a procompetitive arrangement," the "restraint is not automatically deemed ancillary." *Ins. Brokerage Antitrust Litig.*, 618 F.3d at 346.  The reasonable-necessity requirement "distinguish[es] between those restraints that are intended to promote the efficiencies" of a collaboration "and those that are simply unrelated." *Salvino*, 542 F.3d at 339 (Sotomayor, J.,

concurring in the judgment); *see* Appellants' Br. 34-35 (explaining reasonable-necessity requirement).

4. The District Court correctly recognized that, if a horizontal employee-allocation conspiracy is not ancillary, it is per se unlawful. Order, Dkt. 130 at 28-29 & n.17 (noting that defendants argued that per se treatment is appropriate "only" for "naked no-poach" restraints and acknowledging that employee-allocation agreement in another case is "naked horizontal market allocation agreement"). The District Court did not, however, apply the proper two-part ancillarity test. Nor did the court acknowledge that, to obtain dismissal at the pleading stage based on the ancillary-restraints defense, defendants must demonstrate that the defense's elements are apparent from the allegations in the complaint. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (defense "may be raised" on Rule 12(b)(6) motion if "defense appears on the face of the complaint").

The District Court asserted that the alleged restraint "accompan[ies]" and is "part of" a purportedly "collaborative business relationship[]" between Saks and the Brand Defendants—specifically, that Saks sells the Brand Defendants' products and that the Brand Defendants have concessions at Saks stores. Order, Dkt. 130 at 31, 34. But the amended complaint contains no

allegations of any connection, let alone a subordinate and collateral connection, between the alleged conspiracy and those business relationships.

Rather, plaintiffs allege that the conspiracy's sole "objective" is "to reduce" luxury-retail employees' "compensation and mobility," Am. Compl., Dkt. 44, ¶ 93, contradicting the District Court's view that the conspiracy is "part of a larger 'legitimate business collaboration,'" Order, Dkt. 130 at 34 (quoting *Dagher*, 547 U.S. at 6). One of the Brand Defendants does not even operate department-store concessions, further undermining the District Court's conclusion. Motion to Dismiss, Dkt. 95-1 at 4 n.2.

Moreover, the alleged conspiracy has existed "since at least 2014," Am. Compl., Dkt. 44, ¶ 91, but the amended complaint suggests that defendants' business relationships have been in place much longer— indicating that the conspiracy is not a component of (let alone secondary to) the business relationships. *See id.* ¶ 22 (due to industry changes "beginning in the 1990s," luxury retail brands started "increasing the number of store locations"), ¶¶ 24-27 (describing luxury brands' long lineages).

Perhaps most glaringly, defendants' denial of the conspiracy, Motion to Dismiss, Dkt. 95-1 at 20-28—coupled with plaintiffs' allegation that defendants "actively concealed" the conspiracy, Am. Compl., Dkt. 44, ¶ 95—is

inconsistent with the notion that the restraint is part and parcel of a legitimate collaboration.

In addition, as plaintiffs explain, nothing in the amended complaint establishes the ancillarity defense's second requirement—reasonable necessity. *See* Appellants' Br. 35-36. The District Court opined that the conspiracy "allow[s] Saks stores to exist," permits "the Brand Defendants to sell their products through a nationwide retailer," and protects defendants against the "continual risk that the Brand Defendants w[ill] use their concessions in Saks stores to recruit employees." Order, Dkt. 130 at 32, 34. But these conclusions are not supported by the amended complaint, construed—as it must be—in plaintiffs' favor. *See MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 95 (2d Cir. 2023).

The District Court cited no allegations suggesting that Saks's "exist[ence]" or the Brand Defendants' sales depend on the conspiracy, and the amended complaint suggests otherwise: It claims that defendants "would obtain significant advantages," such as "sav[ings] on training costs," by hiring each other's employees, and it describes defendants as successful enterprises that attained their success in large part due to factors independent of the conspiracy. Am. Compl., Dkt. 44, ¶¶ 21-28, 40-51.

As for the purported "risk" of using concessions to recruit Saks employees, the District Court cited plaintiffs' allegations that, "in a properly functioning and lawfully competitive labor market," two of the Brand Defendants—Prada and Brunello Cucinelli—could have solicited and hired Saks employees.  Order, Dkt. 130 at 31 (citing Am. Compl., Dkt. 44, ¶¶ 56-57, 83).  But plaintiffs correctly point out that these allegations nowhere suggest that, absent the conspiracy, the Brand Defendants would have used concessions to recruit Saks employees, *see* Appellants' Br. 45-46; indeed, Brunello Cucinelli does not have concessions in Saks stores, Motion to Dismiss, Dkt. 95-1 at 4 n.2.

In any event, the existence of such risk is not dispositive.  To be reasonably necessary, restraints must be "commensurate" with the "main" collaboration's procompetitive objectives.  *Addyston Pipe*, 85 F. at 290; *see Salvino*, 542 F.3d at 339 n.6 (Sotomayor, J., concurring in the judgment) (ancillary-restraints doctrine derives from *Addyston Pipe*); *see also Blackburn*, 53 F.3d at 828-29 (agreement not reasonably necessary "to the dissolution of [a] partnership" because agreement had "infinite duration").  A restraint that is "overbroad" with respect to a collaboration's procompetitive goals thus will not qualify as ancillary.  *See Lektro-Vend Corp. v. Vendo Co.*, 600 F.2d 255, 266-67 (7th Cir. 1981).  Far from providing a basis for defendants to satisfy their

burden, plaintiffs' allegations indicate that the conspiracy is overbroad in relation to any legitimate interests defendants may have in preventing use of concessions to solicit Saks employees.

First, the alleged conspiracy not only restricts Brand Defendants from using concessions to recruit Saks employees or from recruiting them to work in the concessions inside of Saks stores; it bars Brand Defendants from hiring *any Saks employees*, even when the employees independently approach recruiters or apply, unsolicited, for jobs at Brand Defendants' standalone boutiques. Am. Compl., Dkt. 44, ¶¶ 157-61, 165-70, 173-81.

Second, the alleged conspiracy restricts not only hiring of Saks employees by brands that have concessions at stores where the employees work, but also hiring of Saks employees by "any brand carried by Saks" or "any of the designer companies at Saks." *Id.* ¶¶ 118, 175, 180-81.

Third, the alleged conspiracy operates for employees' entire tenures at Saks, *plus* six months. *Id.* ¶ 89. To the extent defendants claim that the conspiracy is an attempt to retain employees in whom the defendants have invested, the restraint's duration belies defendants' argument: For longtime Saks employees (and especially for former longtime employees in the post-employment six-month window), the hiring restriction extends beyond the

time frame by which Saks has recouped its investment in training the employees.

Because the alleged conspiracy applies to more employees and more brands over a longer time span than reasonably necessary to address any risk that the District Court found to exist, defendants cannot meet their burden of establishing reasonable necessity.  By denying that the alleged conspiracy exists while acknowledging that defendants have productive business relationships, defendants practically concede the point.[4]  Motion to Dismiss, Dkt. 95-1 at 20-28.

---

[4] As plaintiffs show (Appellants' Br. 55), the District Court correctly rejected the argument that the amended complaint was deficient due to the one-way nature of the alleged conspiracy (i.e., that the conspiracy limited the Brand Defendants', but not Saks's, hiring practices).  Order, Dkt. 130 at 23-27. Plaintiffs are not required to allege that the conspiracy involved reciprocal promises; instead, plaintiffs need only show "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement."  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 183 (2d Cir. 2012) (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946)). In an analogous context, courts have upheld criminal convictions for one-sided bid-rigging conspiracies where one party promised to submit high bids so that a co-conspirator would win a contract.  *United States v. Reicher*, 983 F.2d 168, 169-70, 172 (10th Cir. 1992); *United States v. W.F. Brinkley & Son Constr. Co.*, 783 F.2d 1157, 1159-60 (4th Cir. 1986); *United States v. Bensinger Co.*, 430 F.2d 584, 586-87, 589 (8th Cir. 1970).

## II. The District Court Misapplied the Law In Its Statute-of-Limitations Analysis

Because ongoing anticompetitive conduct can harm parties long after the conduct started, the Supreme Court has recognized the continuing-violation doctrine. *E.g.*, *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 502 n.15 (1968). Under the doctrine, when a defendant commits an ongoing violation, any overt acts that injure a party restart the limitations period for that party. Without such a rule, a plaintiff's cause of action for conspiracy would accrue only the first time the conspiracy injures the plaintiff—and would not re-accrue with future overt acts in furtherance of the conspiracy, potentially allowing conspirators to escape damages claims on timeliness grounds so long as the conspiracy continues for enough time (and affected plaintiffs do not bring suit in the first four years). The District Court allowed defendants to elude liability on just that basis, holding that three plaintiffs could not bring suit because they filed their complaint more than four years after *first* being injured by the alleged conspiracy. That holding, if uncorrected, erroneously imposes a procedural hurdle for workers subject to long-running employee-allocation conspiracies, as well as others subject to ongoing antitrust violations.

1.  The applicable statute of limitations provides that damages actions under the Sherman Act must be "commenced within four years after the cause of action accrued."  15 U.S.C. § 15b.  A Rule 12(b)(6) dismissal based on a statute of limitations is appropriate only "if the defense appears on the face of the complaint."  *Conn. Gen. Life Ins. Co. v. BioHealth Labs, Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021).

Absent any other doctrine tolling the limitations period,[5] the District Court should not have dismissed three plaintiffs' claims on timeliness grounds unless, based on the face of the complaint, their "cause[s] of action accrued" before February 14, 2016.  *See* 15 U.S.C. § 15b.  The allegations establish that the three plaintiffs' causes of action accrued after that date because plaintiffs allege (1) a continuing conspiracy and (2) overt acts in furtherance of the conspiracy that caused injury during the limitations period.

"Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business."  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971).  When a claim rests on "a continuing conspiracy to violate the antitrust laws," this principle

---

[5] Plaintiffs do not argue that their claims are timely under the discovery rule, the fraudulent-concealment doctrine, or any other doctrine tolling the limitations period.

typically "mean[s] that[,] each time a plaintiff is injured by an act of the defendants[,] a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act." *Id.*

For example, in *Hanover Shoe*, the Supreme Court addressed a plaintiff's 1955 lawsuit against a defendant that had implemented a policy, dating back to 1912, of "leasing but not selling" shoe machinery. 392 U.S. at 487, 502 n.15. The Court stated that the cause of action did not involve "a violation which, if it occurs at all, must occur within some specific and limited time span"; instead, the cause of action involved conduct "which inflicted continuing and accumulating harm on [the plaintiff]." *Id.* at 502 n.15. As a result, while plaintiff "could have sued in 1912 for the injury then being inflicted, it was equally entitled to sue in 1955." *Id.*

This Court applied *Hanover Shoe* in *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979). *Berkey Photo* held that, when a monopolist engages in anticompetitive conduct before the limitations period and "use[s] the power it has gained illicitly to overcharge its customers" during the limitations period, the customers may sue for overcharges incurred during the four years before filing suit. *Id.* at 295-96.

The Supreme Court subsequently addressed the continuing-violation doctrine's application to price-fixing conspiracies: "Antitrust law provides that, in the case of a continuing violation, say, a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, each overt act that is part of the violation and that injures the plaintiff, *e.g.*, each sale to the plaintiff, starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (internal quotation marks and citation omitted).

Courts of appeals have applied *Klehr*'s reasoning not only to price-fixing conspiracies, but also to market-allocation conspiracies and buy-side conspiracies. *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 106 (3d Cir. 2010) (cause of action accrued when health insurer "refused to increase [hospital]'s reimbursement rates"); *In re Wholesale Grocery Prods. Antitrust Litig.*, 752 F.3d 728, 736-37 (8th Cir. 2014) (cause of action accrued whenever plaintiffs were charged "inflated prices" due to market-allocation conspiracy). At least one district court has specifically held that, under *Klehr*, a cause of action for an employee-allocation conspiracy accrues each time employees receive wages suppressed by virtue of the conspiracy. *Turner v.*

*McDonald's USA, LLC*, No. 19-C-5524, 2020 WL 3044086, at \*4 (N.D. Ill. Apr. 24, 2020).

2. Contrary to the District Court's holding, no statute-of-limitations defense is evident on the amended complaint's face. Plaintiffs allege that defendants entered into a conspiracy by 2014 and that the conspiracy continued at least through the amended complaint's filing. *See* Am. Compl., Dkt. 44, ¶¶ 91, 193; *see also* ¶¶ 1, 89-90, 209-10 (describing conspiracy's terms).

Plaintiffs, including the three plaintiffs whose claims were dismissed as time-barred, also allege that they were injured during the limitations period by defendants' overt acts in furtherance of the conspiracy. The three plaintiffs worked at Saks after February 14, 2016, *id.* ¶¶ 8-10, and allegedly were undercompensated by Saks during the entirety of their tenures at Saks, *id.* ¶¶ 1-2, 93-94, 139, 151-54, 186, 192-93, 200. The amended complaint alleges that the under-compensation is directly attributable to conduct undertaken during the limitations period. *Id.* ¶¶ 147-51 (alleging that plaintiff spoke with Brand Defendant about job "in February 2016," plaintiff did not receive job due to conspiracy, and "Saks would have been forced to adopt a strategy to retain [the plaintiff] (e.g., increasing her hourly rate, enhancing the terms of her commission agreement, or matching the compensation terms of the Brand

Defendants' offers)" had the Brand Defendant "been permitted to offer [her] employment"), ¶¶ 171-86 (similar allegations about another plaintiff). In addition, some of the plaintiffs allege that they applied for jobs with the Brand Defendants during the limitations period and did not obtain the jobs due to the conspiracy. *Id.* ¶¶ 147-49 (plaintiff spoke with Brand Defendant employee about a job "in February 2016," but employee said that Brand Defendant "has an agreement with Saks not to recruit Saks Luxury Retail Employees"), ¶¶ 171-81 (plaintiff "sent dozens of resumes and job applications" to Brand Defendants "[f]rom 2014 to 2017" and spoke with recruiters about employment at Brand Defendants "[b]eginning in 2017," but was told by recruiters that "she would have to leave Saks" and remain unemployed for months before working for Brand Defendants).

Because these allegations show that the three plaintiffs, "[i]n the context of a continuing conspiracy to violate the antitrust laws," were "injured by" defendants' overt acts during the limitations period, plaintiffs' claims for damages suffered during that period are not subject to dismissal on timeliness grounds. *See Zenith Radio*, 401 U.S. at 338.

3. The District Court accepted that plaintiffs had alleged a continuing antitrust violation, *see* Order, Dkt. 130 at 13 & n.8, but incorrectly held that plaintiffs had not alleged an "overt act" by defendants during the limitations

26

period, *id.* at 14-21.  This conclusion rests on a misunderstanding of the

relationship among *Klehr*, *Berkey Photo*, and *US Airways*.

i.  The District Court improperly determined that the statute-of-

limitations issue was controlled not by *Klehr* but by *US Airways*, which held

that a Section 1 claim based on "a reaffirmation of a previous act" was

untimely.  Order, Dkt. 130 at 15-18.  *US Airways* nowhere suggests, however,

that it is inconsistent with the legal principles described in *Klehr* and, in fact,

relies on *Klehr*'s discussion of the continuing-violation doctrine.  938 F.3d at

67.

The factual allegations in *US Airways*, which involved a contract that

allegedly imposed unlawfully high fees on the plaintiff, are materially

distinguishable from the continuing price-fixing conspiracy discussed in *Klehr*.

The challenged anticompetitive contract in *US Airways*, an agreement

allegedly creating unlawful market power, "occur[red] within some specific

and limited time span"—i.e., the moment when the contract setting the fees

was executed.  *See Hanover Shoe*, 392 U.S. at 502 n.15.  Those fees still would

have been owed under the contract even if the defendant had lost its

purported market power after executing the contract; thus, collection of the

fees according to the contract's terms was not a new overt act restarting the

statute-of-limitations period.  Therefore, *US Airways* simply establishes that,

where an antitrust violation does not encompass continuing conduct, the
continuing-violation doctrine does not apply, *see* 938 F.3d at 67-69—a
holding not applicable to the price-fixing conspiracy discussed in *Klehr* or to
this case, where the District Court acknowledged that plaintiffs had alleged a
continuing antitrust violation, *see* Order, Dkt. 130 at 13 n.8.

*US Airways*' recognition that certain contracts are not continuing
violations is consistent with the Supreme Court's recognition that, for statute-
of-limitations purposes, "contract[s] in restraint of trade," which are
"instantaneous," can be distinguishable from "conspirac[ies] in restraint of
trade," which "may endure." *United States v. Kissel*, 218 U.S. 601, 607-08
(1910); *cf. United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 250-54 (1940)
(in criminal price-fixing case, treating price-fixed sales pursuant to ongoing
conspiracy as overt acts that established venue in district where sales took
place); *United States v. Trenton Potteries Co.*, 273 U.S. 392, 403-04 (1927)
(similar).

Indeed, following *US Airways*, multiple district courts (including the
district court in *US Airways* on remand) have relied on the distinction between
discrete contracts and ongoing conduct to hold that *US Airways* does not bar
claims based on continuing violations. *In re Seroquel XR*, No. 20-1076-CFC,
2022 WL 2438934, at *8-10 (D. Del. July 5, 2022); *Humana Inc. v. Celgene*

*Corp.*, No. 19-7532, 2022 WL 1237883, at *11 (D.N.J. Apr. 27, 2022);

*US Airways, Inc. v. Sabre Holdings Corp.*, No 11-civ-2725, 2022 WL 1125956, at

*5-6 (S.D.N.Y. Apr. 15, 2022).

The District Court misapprehended the distinction between

instantaneous and ongoing violations by suggesting that *US Airways*' holding

applies to the latter*.* If the District Court were correct, *US Airways* would have

overruled *Berkey Photo* and contravened *Hanover Shoe*, *Zenith Radio*, and

*Klehr*—which *US Airways* never did or claimed to do. 938 F.3d at 67-68 (citing

*Hanover Shoe*, *Zenith Radio*, and *Klehr*).

The District Court also discounted *Klehr* because "*Klehr* involved a civil

RICO claim" and the decision's discussion of the antitrust statute of limitations

is thus, according to the District Court, "dicta." Order, Dkt. 130 at 18. But the

statute of limitations for civil RICO claims and civil antitrust claims is the

same, *see* 15 U.S.C. § 15b, so *Klehr*'s discussion of price-fixing was highly

pertinent to the Court's reasoning. *See Klehr*, 521 U.S. at 183 (antitrust statute

of limitations applies in civil RICO cases); *see also Bankers Tr. v. Rhoades*,

859 F.2d 1096, 1104 (2d Cir. 1988) (same claim-accrual rules apply in both

civil RICO and civil antitrust contexts).

Even if the relevant language in *Klehr* were dicta, this Court normally

"accord[s] great deference to Supreme Court *dicta*." *United States v. Afriyie*,

27 F.4th 161, 171 (2d Cir. 2022) (citation omitted).  This Court followed that

deferential practice in *US Airways* by relying on *Klehr*'s discussion of price-

fixing conspiracies, 938 F.3d at 67, and other courts have relied on *Klehr* to

hold that each sale in an ongoing conspiracy restarts the limitations period.

*Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014); *W. Penn Allegheny*,

627 F.3d at 107; *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 290-91

(4th Cir. 2007); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902

(6th Cir. 2009); *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059,

1064 (8th Cir. 2017); *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823,

828 (11th Cir. 1999), *amended in part*, 211 F.3d 1224 (11th Cir. 2000).

ii.  The District Court erroneously cited *Berkey Photo* to argue that

*Klehr*'s discussion of price-fixing is irrelevant to this case, claiming that *Berkey*

*Photo* established that "price-fixing conspiracies have two different accrual

rules"—one for "competitors," one for "consumers."  Order, Dkt. 130 at 18-19.

But no price-fixing conspiracy was at issue in *Berkey Photo*, and the decision

nowhere discusses the statute of limitations' application to price-fixing

conspiracies.  603 F.2d at 295-96.

While *Berkey Photo* noted that competitors' monopolization claims

might accrue at different times than consumers' monopolization claims, *id.* at

295, that is not because the different types of plaintiffs are subject to

30

"different accrual rules," *see* Order, Dkt. 130 at 18-19. The same accrual rule (*Zenith Radio*'s) applies to both types of claims, yet factual differences can lead to different outcomes: Competitors are often "injured" as soon as "the dominant firm commences" an anticompetitive policy, but sometimes consumers are not injured right away—only after the firm excludes competitors and "boost[s] its price to excessive levels." *Berkey Photo*, 603 F.2d at 295 (citing *Zenith Radio*, 401 U.S. at 339). Nothing in *Berkey Photo* undermines *Klehr*'s application here: If plaintiffs suffer antitrust injury during the limitations period due to overt acts committed pursuant to a continuing violation, the plaintiffs may bring suit, whether they are "consumers," "competitors," or neither. *See Zenith Radio*, 401 U.S. at 338; *see also W. Penn Allegheny*, 627 F.3d at 102, 106 (applying "straightforward reading of *Zenith [Radio]*" to hold that claims brought by hospital plaintiff, which was neither consumer nor competitor of insurer defendant, were timely).

The District Court thus erroneously imposed a more onerous statute-of-limitations standard on the ground that plaintiffs—as workers—"are neither consumers nor competitors," Order at 19. The Supreme Court has stated that the Sherman Act "does not confine its protection to consumers, or to purchasers, or to competitors, or to sellers." *Mandeville Island Farms*, 334 U.S. at 236; *supra* at 10-11. Workers harmed by employer conspiracies depressing

hiring competition and wages stand in the same shoes as consumers harmed by sellers' price-fixing and have the same period of recourse. *See Alston*, 141 S. Ct. at 2167-68 (Kavanaugh, J., concurring) ("Price-fixing labor is price-fixing labor. And price-fixing labor is ordinarily a textbook antitrust problem . . . .").

3. Finally, the District Court expressed the unjustified worry that, under plaintiffs' "theory," Saks employees "could choose to bring identical claims against Defendants five or even ten years from now." Order, Dkt. 130 at 20. Not so. No matter when plaintiffs bring suit, they typically can recover only for injuries stemming from overt acts committed within the preceding four years. *See Klehr*, 521 U.S. at 189. If Saks employees were to bring suit in five or ten years, they would likely be able to recover only damages incurred in the four years before filing suit (as well as non-speculative future damages), not the damages they are suffering now. *See Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d at 1068. The continuing-violation doctrine does not extend the limitations period and does not create incentives for plaintiffs to sit on their rights.

In contrast, the District Court's approach violates longstanding policy. Under this approach, plaintiffs forever lost their right to recover damages four years after the conspiracy was formed. This analysis risks preventing

recovery in damages suits when conspiracies last longer than four years. *Cf. Berkey Photo*, 603 F.2d at 296 ("[I]t would undercut enforcement of the Sherman Act to hold that, if a monopolist merely retains its illicit market control for four years after its last anticompetitive action, it may charge an exorbitant price until its power is eviscerated in an appropriate suit for equitable relief."). This reasoning is "contrary to the congressional purpose that private actions serve as a bulwark of antitrust enforcement and that the antitrust laws fully protect the victims of the forbidden practices as well as the public." *Zenith Radio*, 401 U.S. at 340 (internal quotation marks and citations omitted).

## CONCLUSION

This Court should reverse the District Court's decision and remand for further proceedings.

Respectfully submitted.

_/s/ Peter M. Bozzo_

JONATHAN S. KANTER
　*Assistant Attorney General*
DOHA MEKKI
　*Principal Deputy Assistant Attorney General*
MAGGIE GOODLANDER
　*Deputy Assistant Attorney General*
DAVID B. LAWRENCE
　*Policy Director*
ERIC D. DUNN
　*Counsel to the Assistant Attorney General*
DANIEL E. HAAR
NICKOLAI G. LEVIN
STRATTON C. STRAND
PETER M. BOZZO
BRANDON STORM
　*Attorneys*
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., N.W., Room 3224
Washington, D.C. 20530-0001
(202) 803-1196
peter.bozzo@usdoj.gov

August 4, 2023　　　　*Counsel for the United States of America*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 29(a)(4)(G) and Fed. R. App. P. 32(g)(1), I certify that this brief complies with the type-volume limitation of 2d Cir. R. 29.1(c) and 2d Cir. R. 32.1(a)(4)(A) because, excluding the parts exempted by Fed. R. App. P. 32(f), this brief contains 6,999 words.

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in Microsoft Office Word Professional Plus 2019 using 14-point New Century Schoolbook font.

August 4, 2023                          _/s/ Peter M. Bozzo_____
                                        *Counsel for the United States of America*